(42 South. 945.)

No. 16,160.

MAYOR & BOARD OF TRUSTEES OF THE CITY OF NEW IBERIA v. ERATH.

(Jan. 7, 1907. Rehearing Denied Feb. 4, 1907.)

INTOXICATING LIQUORS—LICENSES—WHOLESALE DEALERS.

Since the passage of the act of Congress commonly called the "Wilson Act" (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]) wholesale dealers in imported liquors selling in original package may be required to pay a state or municipal license tax in the same manner as wholesale dealers in domestic liquors.

[Ed. Note.—For cases in point. see Cent. Dig. vol. 29, Intoxicating Liquors, § 50.]

(Syllabus by the Court.)

Provosty, J., dissenting.

Appeal from Nineteenth District Court, Parish of Iberia; James Simon, Judge.

Action by the mayor and board of trustees of the city of New Iberia against Victor Erath. Judgment for plaintiffs, and defendant appeals. Affirmed. ·

Louis Octave Hacker and Weeks & Weeks, for appellant. Andrew Jackson Cammack, City Atty., for appellees.

·

LAND, J. Defendant was sued for $200, the amount of his license as a wholesale liquor dealer as per city ordinance. He answered that his sole business as a liquor dealer consisted in the importation and sale of beer in original packages, and that such business constituted interstate commerce, which could not be taxed or licensed by the state of Louisiana or the city of New Iberia, and that the ordinance in question was violative of article 1, § 10, of the Constitution of the United States. There was judgment in favor of the plaintiff, and the defendant has appealed.

In December, 1905, the municipal authorities of the city of New Iberia enacted an ordinance imposing a license tax of $200, for the year 1906 on all wholesale dealers engaged in selling alcoholic, vinous, or malt liquors within the corporate limits of said city, in addition to a license of $1,000 for a retail business, as provided by another city ordinance. This license tax on wholesale· dealers was made payable on January 2, 1906, and, if not paid within five days, the· tax became delinquent.

It is admitted that the business of defendant is correctly described in his answer, and that the city of New Iberia derives from its wholesale and retail and other revenue licenses for the year 1906 a total revenue of about $16,000, and that its total revenues. from all sources is about $42,000.

The principal contention of the defendant is that the act of Congress commonly called the "Wilson Act" (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]),.

while subjecting intoxicating liquors transported into any state or territory upon arrival "to the operation and effect of the laws of such state or territory enacted in the exercise of its public powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory," did not subject the importers and dealers in such articles to license taxation for revenue purposes.

This statute has been construed by the Supreme Court of the United States, and the whole jurisprudence on the subject was reviewed in the case of Pabst Brewing Co. v. Crenshaw, 198 U. S. 17, 25 Sup. Ct. 552, 49 L. Ed. 925. It is stated in the dissenting opinion in that case on page 32 of 198 U. S., page 556 of 25 Sup. Ct. (49 L. Ed. 925), that the plaintiff had been "licensed to carry on business in the state of Missouri," and the question before the court was not of a license tax, but of fees for inspection. The majority opinion is based on the proposition decided in Re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, that imported liquors, upon arrival in a state, fall within the category of domestic articles of a similar nature. Justice White, the organ of the court, quoted the following extracts in Re Rahrer, supra, to wit:

"Congress has now spoken and declared that imported liquors or liquids shall upon arrival in a state fall within the category of domestic articles of a similar nature. * * * No reason is perceived why, if Congress chooses to provide that certain designated subjects of interstate commerce shall be governed by a rule which divests them of that character at an earlier period of time than would otherwise be the case, it is not within its competency to do so."

The opinion cites the following cases affirming the doctrine thus enunciated: Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088, Vance v. Vandercook Co., 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1111, and Express Companies v. Iowa, 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417; Id., 196 U. S. 147, 25 Sup. Ct. 185, 49 L. Ed. 424. In answer to the contention that the inspection statute was not enacted in the exercise of the police power of the state of Missouri, but was a mere revenue measure, the court said:

"The purpose of the Wilson act was to make liquor after its arrival a domestic product, and to confer power upon the states to deal with it accordingly. The police power is hence to be measured by the right of a state to control or regulate domestic products—a state and not a federal question as respects the commerce clause of the Constitution. So far as the state aspect is concerned, the matter is foreclosed by a decision of the Supreme Court of Missouri passing upon the validity, under the state Constitution, of the law now under consideration."

The minority of the court were of the opinion that the statute of the state of Missouri was not a bona fide inspection regulation, but a mere revenue measure, discriminating against imported liquors, and as such did not fall within the purview of the Wilson act. We make the following extract from the dissenting opinion:

"If foreign liquors were subject to the same inspection as domestic liquors, there would be much force in the contention that the inspection was covered by the terms of the Wilson act; but, as in this case domestic liquors were actually inspected, and foreign liquors were not inspected at all, the act does not apply. The object of the act is merely to place foreign and domestic liquors on the same footing as respects the police powers of the state."

The answer of the defendant does not assail the ordinance as ultra vires, or as violative of the state Constitution, but his sole plea is that his business constitutes interstate commerce, and "as such cannot be taxed or licensed by the state of Louisiana or the city of New Iberia," and that the ordinance is violative of article 1, § 10, of the Constitution of the United States. In the Pabst Case, supra, it was held that the state has the same right of control and regulation over imported liquor as it has over domestic liquor; and that the extent of this police power was a state, and not a federal, question. It follows that the plea of unconstitutionality set up in the answer is without merit. This was the only issue of law raised

by the pleadings in the court below. The ordinance was not assailed as violative of the Constitution of the state, but the power of both state and city was challenged to tax or license defendant's occupation.

The ordinance itself levied no tax or charge whatever on the imported liquor, but required the defendant to procure a license for its sale. There was no discrimination against him whatever, as the same license was required of all other wholesale dealers in liquor. It is argued, however, that the imposition of this particular license tax was not an exercise of the police powers of the city, and therefore that this case does not fall within the Wilson act. There can be no doubt that the prohibition or regulation of the manufacture and sale of intoxicating liquors falls within the domain of the police power, and that the requirement of a previous license before engaging in such business is one of the modes of regulation.

Mr. Tiedeman, in his work on Limitations of Police Power says:

"One of the most effective modes of restraining and limiting saloons in any particular town or city, is to require a heavy license of the keepers of them." Id. p. 275.

The same writer further says:

"The money collected by way of a license as a police regulation may go into the state treasury for general purposes, and need not be devoted especially to the relief of burdens which the prosecution of the trade or occupation imposed upon the state, provided that the character of the occupation is such that restrictions upon its pursuit, looking to its partial suppression, would be constitutional, whatever their character may be. Since the primary object of such a law would be to operate as a restriction upon the trade, and not to raise a revenue, the incidental increase in the revenue would constitute no valid objection of the law." Id. pp. 276, 277.

Freund, in his recent work on Police Power, under the head of "Public Morals," includes the subject of "Intoxicating Liquors," and states that "the great object of the police power is the control of the traffic in liquor." Id. 193. The same writer, in discussing the licensing system, says:

"By making the license fee or tax sufficiently high, even the system of granting licenses as a matter of right may be used as a means of restricting the liquor traffic." Id. 196.

The Constitution of 1898 leaves no room for argument on this question, for article 181 provides that:

"The regulation of the sale of alcoholic or spiritous liquors is declared a police regulation and the General Assembly may enact laws regulating their sale and use."

The licensing of the traffic is necessarily included as one of the modes of regulation. Article 229 of the same Constitution, while providing that no political corporation shall impose a greater license tax than is imposed for state purposes, declarés that "this restriction shall not apply to dealers in distilled, alcoholic or malt liquors." It is a matter of local history that a number of parishes and municipalities of this state have availed themselves of this privilege by raising licenses on the liquor traffic almost to the point of prohibition. Such discriminatory license taxation can be justified only on the theory of the exercise of the police power. Article 181 of the Constitution of 1898 declared all regulations of the sale of intoxicating liquors to be police regulations, and article 229 excepted dealers in such liquors from the rule of uniformity of taxation applied to all other classes of persons. The conclusion is obvious that the license taxation of dealers in intoxicating liquors is based on the nature of their business, rather than on considerations of public revenue. That such license taxation may incidentally raise revenue does not alter the fundamental basis of the tax. As to the argument that the statement of facts inferentially admits that the license ordinance is for revenue, it suffices to say that the question of the nature of the ordinance and of the intention of its framers must be gathered from the terms of the ordinance itself, read in the light of constitutional and legislative provisions on the same subject-matter. In a certain sense all

licenses are revenue measures. But in the case at bar, as the municipal authorities had no power to tax for revenue purposes alone, the ordinance must be construed as an exercise of the police power permitted by the Wilson act. Of two interpretations that is to be preferred which saves the law and gives it effect. In Sheriff v. Daigle, 107 La. 510, 32 South. 94, this court said that the solution of the question whether a liquor license tax was for revenue or regulation depended on the surrounding circumstances. In that case all the licenses were levied by one and the same ordinance. In this case the license was levied by a separate ordinance, and was not graded as is required of licenses for revenue. We see no good reason, since the passage of the Wilson act, for differentiating between the dealer in imported beer and the dealer in domestic beer, to the extent of exempting the one and taxing the other. If, under the Wilson act, the dealer may be absolutely prohibited from selling the imported liquor, as in Kansas and South Carolina, we see no reason why he may not be compelled to pay a license for the privilege of selling within the state. The greater includes the less.

Judgment affirmed.

PROVOSTY, J., dissents, holding that the license in question is admitted to be for revenue, and, moreover, in the absence of any admission on the subject, ought to be held to be of that character on the facts.