## THE STATE v. EDWARD COLEMAN.

Submitted March 18, 1910—Decided October 27, 1910.

1. A state law which places restrictions upon the right to ship liquor from another state to a resident of the state in which the law is enacted is repugnant to the commerce clause of the federal constitution, and void.
2. The commerce clause of the federal constitution protects not only the non-resident shipper of intoxicating liquor, but also his agent who takes the order for the liquor, and subsequently receives it from his principal and delivers it to the buyer, and collects from him the purchase price thereof.
3. The act of March 20th, 1889, which prohibits the sale of intoxicating liquors without a license, does not apply to a sale made by a vendor residing in, and doing business in, a sister state, to a purchaser residing in this state, even though the delivery is made in this state.

On error to the Union Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and VOORHEES.

For the plaintiff in error, *McDermott & Enright.*

For the state, *C. Addison Swift*, prosecutor of the pleas, and *Walter L. Hetfield, Jr.*, assistant prosecutor.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was indicted and convicted for a violation of the second section of the act regulating the sale of intoxicating liquors, approved March 20th, 1889 (*Pamph. L., p. 77*), which provides that no person or persons whomsoever shall sell or offer or expose for sale any intoxicating liquors in any quantity from one quart to five gallons without a license for that purpose first had and obtained and declares that any person violating this provision shall be guilty of the offence of keeping a disorderly house. The material facts proved in the case which are necessary for a determination of the writ of error are undisputed and are as follows:

Siegel-Cooper Company are the owners and operators of a large department store in the city of New York. They maintain a distributing room in the town of Cranford, in this state, to which they send goods purchased by customers living in that vicinity, and a number of wagons by which these goods are delivered to such customers. Their sales are made either directly over the counter of their New York store or through mail orders sent to that store, or on orders given by customers to the drivers of their various delivery wagons and forwarded or delivered by these drivers to the New York store. The defendant was a driver in the company's employ. His delivery route was from Cranford to Dunellen, and included the city of Plainfield. The name "Siegel-Cooper Co., 6th Avenue & 18th Street" was prominently painted on the wagon. On the 2d day of April, 1909, one Rainey, a detective, living in Plainfield, stopped Coleman, the defendant, as he was passing through the streets of that city with his delivery wagon, and said to him, "Bring me a bottle of Hermitage whiskey." To this request Coleman replied, "All right." Rainey knew when he gave the order that Coleman was a driver for the company and expected that the order would be taken by him to his employers in New York. After Coleman finished work on his

delivery route that evening he wrote out the order for the whiskey and sent it to his employers at the New York store. In due course the order was filled by the Siegel-Cooper Company and sent out by it from New York to its distributing room at Cranford. The bottle of whiskey was there turned over to Coleman, with other parcels for other customers, for delivery. When Coleman, during the course of his deliveries, reached Rainey's house in Plainfield, he delivered to him the bottle of whiskey (which contained a quart) and collected from him $1.50, the purchase price thereof, and, subsequently, turned the amount in to his employers in New York. At the time of the delivery, Rainey ordered another bottle of the same whiskey, and it was subsequently received by him under like conditions as to the transmission of the order and of the package. Both bottles were tagged by him with a card stating that they were "received from Siegel-Cooper Company of New York City, New York," and were then placed by him in the hands of the chief of police of the city of Plainfield. These facts being undisputed, counsel for the defendant, at the close of the proofs, moved the trial court for the direction of a verdict of acquittal, upon the ground that the facts proved did not bring the case within the statute, and upon the further ground that the sales upon which the indictment was founded were interstate commerce, and therefore were not subject to regulation by state law. The motion was refused, and this judicial action is made the subject of the principal assignment of error.

The theory upon which the court refused the motion to direct a verdict for the defendant seems to have been that the reception by him in this state of an order for whiskey to be furnished by the Siegel-Cooper Company from their store in New York, and the subsequent delivery of the whiskey in this state by the defendant, and the collection of its price upon delivery, constituted a violation by him of the provision of the statute regulating the sale of intoxicating liquor which has already been recited.

Assuming this to be so, the case raises the question whether state legislation, which makes punishable a transaction of this

kind, is a regulation of interstate commerce, and consequently void so far as it has this effect. That such a legislative provision is a regulation of interstate commerce is settled beyond dispute. The cases in the United States Supreme Court so holding are too numerous for citation. A reference to a few of the later decisions will suffice.

The case of *Vance* v. *Vandercook Company,* 170 *U. S.* 438, presented the following situation: The corporation was a resident of the State of California and engaged in the business of distilling and selling wines and brandies. Its traveling agent had orders from certain residents of Charleston, South Carolina, to deliver to them packages of these liquors, the product of the corporation. In consequence of these orders the packages were shipped from San Francisco to Charleston, and, on their arrival, were seized by the authorities of South Carolina, and confiscated, for failure on the part of the vendor and of the vendee to comply with a certain provision of the State "Dispensary law." The court held the provision invalid. Mr. Justice White, after declaring that the earlier decisions of the court had established beyond dispute the proposition that the right to send liquors from one state to another, and the act of sending the same is interstate commerce, and that a state law which denies such right, or substantially interferes with or hampers the same, is in conflict with the constitution of the United States, went on to say (*p.* 455) that "the right of a citizen of another state to avail himself of interstate commerce cannot be held to be subject to the issue of a certificate by an officer of the State of South Carolina without admitting the power of that officer to control the exercise of that right. But the right arises from the constitution of the United States; it exists wholly independently of the will of either the law making or the executive power of the state. Whether or not it may be exercised depends solely upon the will of the person making the shipment and cannot be in advance controlled or limited by the action of the state in any department of its government."

In the case of *Pabst Brewing Co.* v. *Crenshaw,* 198 *U. S.* 17, it is said (at *p.* 25) that it is settled by Vance *v.* Vandercook Company that in so far as the state law imposed burdens on the right to ship liquor from another state to a resident of the state in which the law has been enacted—the liquor being intended for the use of such resident and not for sale within the state—it is repugnant to the federal constitution; and that the state has no power to prevent a person who resides within its limits from ordering liquors from outside the state for his own consumption.

It is argued on behalf of the state that, under the facts proved in this case, the sales did not become complete until the delivery of the whiskey to Rainey, and the payment by him of the purchase price; that for this reason they were made in New Jersey, and, consequently, were not within the protection of the commerce clause of the federal constitution. But this same contention was made by the commonwealth in the case of *Adams Express Co.* v. *Kentucky,* 206 *U. S.* 129, where a state statute made penal all shipments of liquor "to be paid for on delivery, commonly called C. O. D. shipments," and provided that the place where the money was paid, or goods delivered, should be deemed to be the place of sale. It was held that the statute, as applied to shipments from one state to another, was an attempt to regulate interstate commerce and beyond the power of the state to lawfully enact. To the same effect is *Bowman* v. *Chicago and Northwestern Railway,* 125 *Id.* 465, where it is declared that the fundamental right which is protected from the operation of state laws by the constitution of the United States is the continuity of the shipment of goods coming from one state into another, from the point of transmission to the point of consignment, and the accomplishment there of the delivery covered by the contract. See *Rhodes* v. *Iowa,* 170 *Id.* 419.

It may be well to call attention to the fact that all of the federal decisions to which we have referred, except the Bowman case, were rendered subsequent to the passage of what is known as the Wilson bill passed by congress August 8th, 1890, and which provides "that all fermented, distilled or

other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." The cases cited, and particularly Rhodes *v.* Iowa, hold that this federal statute causes legislative authority of the respective states to attach to intoxicating liquors coming into the states, by an interstate shipment, only after the consummation of the shipment by delivery.

It is clear from the cases above referred to that an attempt to punish the Siegel-Cooper Company for a violation of the provision of our statute regulating the sale of intoxicating liquors would have been futile. It is equally clear that the protection afforded by the commerce clause of the constitution of the United States extends not only to the vendor but also to his agent, who takes the order for the goods and subsequently delivers them to the customer and receives from him the purchase price thereof. It is so decided in terms in the case of *Rearick* v. *Pennsylvania,* 203 *U. S.* 507.

Giving to our statute, then, the construction put upon it by the trial court, we reach the conclusion that, so far as it attempts to prohibit and punish sales of liquor of the character disclosed by the proofs in this case, it violates the commerce clause of the federal constitution and is null and void. But a construction which produces this result ought not to be adopted unless it is apparent from the wording of the statute that such was the legislative purpose. Looking at our act we find nothing in its language which suggests that the law making body, by its enactment, intended to prohibit sales of liquor by a vendor residing in and doing business in another state to a purchaser residing in this state, unless such vendor was licensed by the proper authorities of this state to make such sales. On the contrary, as we read the act, it is limited

in its scope to the regulation of sales of liquor within the state—in other words, of intra-state and not of interstate commerce.

The judgment under review will be reversed.