AMERICAN EXPRESS COMPANY *v.* IOWA.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 67.   Argued December 2, 1904.—Decided January 3, 1905.

The writ of error in *O'Neil* v. *Vermont*, 144 U. S. 344, was dismissed because it did not appear that the commerce clause of the Constitution was relied on in, was called to the attention of, or passed on by, the state court, and the case is inapposite where it appears that the protection of commerce clause was properly set up, relied upon in, and denied by, the state court.

*Bowman* v. *Chicago*, 125 U. S. 465, *Leisy* v. *Hardin*, 135 U. S. 100, *Rhodes* v. *Iowa*, 170 U. S. 412, *Vance* v. *Vandercook Co. No. 1*, 170 U. S. 438, rest on the broad principle of the freedom of commerce between the States, of the right of citizens of one State to freely contract to receive and send merchandise from and to another State, and on the want of power of one State to destroy contracts concerning interstate commerce valid in the States where made.

The right of the parties thereto to make a contract, valid in the State where made, for the sale and purchase of merchandise and in so doing to fix the

time when, and condition on which, completed title shall pass is beyond question.

Without passing on the questions whether the property in a C. O. D. shipment is at the risk of buyer or seller and when the sale is completed, a package of intoxicating liquor received by an express company in one State to be carried to another State, and there delivered to the consignee C. O. D. for price of the package and the expressage, is interstate commerce and is under the protection of the commerce clause of the Federal Constitution and cannot, prior to its actual delivery to the consignee, be confiscated under prohibitory liquor laws of the State.

THE American Express Company received at Rock Island, Illinois, on or about March 29, 1900, four boxes of merchandise to be carried to Tama, Iowa, to be there delivered to four different persons, one of the packages being consigned to each. The shipment was C. O. D., three dollars to be collected on each package, exclusive of thirty-five cents for carriage on each. On March 31 the merchandise reached Tama, and on that day was seized in the hands of the express agent. This was based on an information before a justice of the peace, charging that the packages contained intoxicating liquor held by the express company for sale. The express company and its agent answered, setting up the receipt of the packages in Illinois, not for sale in Iowa, but for carriage and delivery to the consignees. An agreed statement of facts was stipulated admitting the receipt, the carriage, and the holding of the packages as above stated. The seizure was sustained. Appeal was taken to a District Court. The express company and its agent amended their answer, specially setting up the commerce clause of the Constitution of the United States. There was judgment in favor of the express company, and the State of Iowa appealed to the Supreme Court and obtained a reversal. 118 Iowa, 447. This writ of error was prosecuted.

*Mr. Lewis Cass Ledyard* for plaintiff in error:

Plaintiff in error relies on the principles fairly established as to the right of shippers sending goods from one State to another free from state interference in *Leisy* v. *Hardin*, 135 U. S. 100, 110; *Bowman* v *Chicago &c. Ry.*, 125 U. S. 465;

*Rhodes* v. *Iowa,* 170 U. S. 412; *Vance* v. *Vandercook Co.,* 170 U. S. 438, 444; *In re Rahrer,* 140 U. S. 545.

The effect of the propositions established in these cases is to exempt from state regulation or interference, a shipment of liquors imported into a State, until the contract of shipment or the act of interstate transportation is fully performed and consummated by delivery to the consignee. Such delivery marks the first point of time at which the goods become subjected to state control, as being commingled in the general mass of property within the State, and then only is there a subject upon which the police power of the State can operate.

The seizure of the liquors in the present case took place before that time and while the goods were still in the possession of the interstate carrier engaged in the act of interstate transportation. They were, therefore, clearly exempt from seizure or interference or regulation by the State under the propositions above stated.

*O'Neil* v. *Vermont,* 144 U. S. 323, was not decided on Federal grounds but the writ of error was dismissed because not properly taken to the state court. While the position taken by the state court in this case that the technical property in the goods remained in the consignor, and that the express company was their agent with authority to transfer the title to the consignee upon payment of the purchase price, is of little importance, it is opposed by the great weight of authority. In such a case, the sale is complete upon a delivery of the goods to the carrier, who becomes the agent of the consignee for the purpose of accepting a delivery and transporting the goods to him, and the agent of the consignor for the purpose of the collection of the purchase price. *Commonwealth* v. *Russell,* 11 Kentucky, 576; *State* v. *Cairns* (Kansas), 68 Pac. Rep. 621; *James* v. *Commonwealth,* 42 S. W. Rep. 1107; *Commonwealth* v. *Fleming,* 130 Pa. St. 138; *State* v. *Flanagan,* 38 W. Va. 53; *Pilgreen* v. *State,* 71 Alabama, 368; *Higgins* v. *Murray,* 73 N. Y. 252.

At the time of the seizure, the carrier in the present case was

engaged in an act of interstate commerce transportation, and until that was concluded and consummated the goods were not subject to the police power of the State. *Norfolk & Western Railway Co.* v. *Sims,* 191 U. S. 441, citing *Brown* v. *Maryland,* 12 Wheat. 419.

If such a transaction be not interstate commerce, protected by the Federal Constitution from state regulation, then no transaction can come within the definition of those words.

The suggestion in the opinion that "the express company in effect engaged in the business of selling, through agents in this State, intoxicating liquors shipped by it for that purpose from the State of Illinois," and that "this was a mere device, to evade the police laws of this Commonwealth" is not tenable.

The merchandise was not shipped by the express company, but by the consignors.

The express company acted in entire good faith, accepting and forwarding the shipment in the ordinary course of business, without the slightest knowledge or suspicion that it contained intoxicating liquors.

But if this were otherwise, and it had been shown that the carrier had knowledge of the contents of the shipment, it would be quite immaterial as under the cases cited *supra* the property was under the protection of the commerce clause of the Constitution while it was in transportation from one State to another.

*Mr. Lawrence Maxwell, Jr.,* for plaintiff in error in No. 82 [1] argued simultaneously herewith:

The Iowa statute, as construed by its Supreme Court, is repugnant to the Constitution and laws of the United States, unless it is authorized by the Wilson Act.

The Wilson Act does not allow the State of Iowa to prevent the delivery of liquor shipped from another State. Its power under the Wilson Act does not attach until the interstate

---

[1] *Adams Express Co.* v. *Iowa,* p. 147, *post.*

transportation has been completed by delivery to the consignee in Iowa.

The express company did not sell the liquor. It acted only as a common carrier to deliver, on certain conditions, liquor already sold, and its agreement not to deliver the goods until C. O. D. charges were paid and then to return the money to the shippers is a mere incident to its express business and does not subject it to the charge that thereby it engaged in liquor selling at retail in Iowa.

The right to contract in another State for the transportation of merchandise from that State into Iowa, and incidentally to fix the terms upon which the goods shall be delivered, involves interstate commerce in its fundamental aspect, and cannot be controlled by the State of Iowa.

The Supreme Court of Iowa misconceived the decision of this court in *O'Neil* v. *Vermont*, see cases cited by plaintiff in error in No. 67.

See article on Carriers by Justice Emlin McClain, of Iowa, published in 1903, in 6 Cyc. 476, stating that on delivery C. O. D. the title to the goods passes to the consignee on delivery to the carrier, but right to possession in the nature of a vendor's lien remains with the consignor while the goods are in the carrier's possession, and terminates only when the condition is performed and the money paid by the consignee to the carrier, whereupon the title to and possession of the money vests in the consignor. The following cases involved C. O. D. shipments and support that view. *Pilgreen* v. *State*, 71 Alabama, 368; *State* v. *Carl*, 43 Arkansas, 353; *Carthage* v. *Duvall*, 202 Illinois, 234; *Carthage* v. *Munsell*, 203 Illinois, 474; *Breechwald* v. *The People*, 21 Ill. App. 213; *Frolich* v. *Alexander*, 36 Ill. App. 428; *Coffeen* v. *Huber*, 78 Ill. App. 455; *State* v. *Cairns*, 68 Pac. Rep. (Kansas) 621; *Commonwealth* v. *Russell*, 11 Ky. L. R. 576; *James* v. *Commonwealth*, 102 Kentucky, 108; *S. C.*, 19 Ky. L. R. 1045; *S. C.*, 42 S. W. Rep. 1107; *State* v. *Intoxicating Liquors*, 73 Maine, 278; *State* v. *Peters*, 91 Maine, 31; *Higgins* v. *Murray*, 73 N. Y. 252; *Norfolk & Western R. R. Co.*

v. *Barnes*, 104 N. Car. 25; *Commonwealth* v. *Fleming*, 130 Pa. St. 138; *Bruce* v. *State*, 36 Texas Crim. App. 53; *S. C.*, 35 S. W. Rep. 383; *Freshman* v. *State*, 37 Texas Crim. App. 126; *S. C.*, 38 S. W. Rep. 1007; *State* v. *Flanagan*, 38 W. Va. 53; *Sarbecker* v. *State*, 65 Wisconsin, 171; *United States* v. *Adams Express Co.* (Iowa), 119 Fed. Rep. 240; *United States* v. *Lackey* (W. Va.), 120 Fed. Rep. 577; *United States* v. *Orene Parker Co.* (Ky.), Cochran, D, J., October 30, 1902, unreported.

*Mr. Charles W. Mullan*, Attorney General of the State of Iowa, for defendant in error in this case and in No. 82:

Where merchandise is delivered by a consignor to a common carrier to be transported by such common carrier to the consignee, and the common carrier is required to collect from the consignee the purchase price of such merchandise before delivering the same to him, the sale is made at the place where the purchase price is paid and the merchandise delivered to the consignee.

Intoxicating liquors which are shipped C. O. D. from another State into the State of Iowa cease to be protected by the interstate commerce clause upon arrival at their destination, and under the Wilson Act they at once upon arrival at their destination become subject to the operation and effect of the laws of Iowa.

No Federal question is involved which gives this court jurisdiction to hear and determine this cause, for the reason that the decision of the Supreme Court of Iowa does not deny the authority of Congress to regulate commerce among the several States.

The ownership and possession of merchandise which is shipped C. O. D. remain in the consignor until it is delivered to the consignee by the common carrier upon payment of the purchase price, and the sale is made at the place of delivery, except where the consignee expressly designates the common carrier as his agent to transport and deliver such merchandise, or where the acts of the parties show that the consignor in-

tended to part with his property and to transfer the title a..!
possession thereof to the consignee at the time of delivery to
the common carrier. *United States* v. *Shriver*, 23 Fed. Rep.
134; *United States* v. *Cline*, 26 Fed. Rep. 515; *McElwee* v. *Met.
Lumber Co.*, 69 Fed. Rep. 302; *McNeil* v. *Brown*, 53 N. J. Law,
617; *Thompson* v. *Cincinnati, W. & Z. Ry. Co.*, 1 Bond C. C.
152; *Hooper* v. *C. & N. Ry. Co.*, 27 Wisconsin, 81; *Braddock
Glass Co.* v. *Irwin*, 153 Pa. St. 440; *Millheiser* v. *Erdman*, 98
N. Car. 292; *Stone* v. *Perry*, 60 Maine, 48; *Moakes* v. *Nicholson*,
19 C. B. N. S. 290; *Hirshorn* v. *Canney*, 98 Massachusetts, 149;
*Daugherty* v. *Fowler*, 44 Kansas, 628; *Suit* v. *Woodhall*, 13
Massachusetts, 391; *Wasserboehr* v. *Boulier*, 84 Maine, 165;
*Lane* v. *Chadwick*, 146 Massachusetts, 68; Benjamin on Sales
(1883), § 1040; *State* v. *O'Neil*, 58 Vermont, 140; *Brewing Co.*
v. *DeFrance*, 91 Iowa, 108; *State* v. *U. S. Ex. Co.*, 70 Iowa, 271;
*The Francis*, 13 U. S. 183; Mechem on Sales, §§ 494, 502, 740.

The place of the sale of goods or merchandise is the place
of delivery; that is, where the sale is completed by delivery.
*Dow* v. *Gould &c. Silver Min. Co.*, 31 California, 629; *Mead*
v. *Dayton*, 28 Connecticut, 39; *Lewis* v. *McCabe*, 49 Connecti-
cut, 155; *Weil* v. *Golding*, 141 Massachusetts, 364.

Under the Wilson Act all fermented, distilled or other in-
toxicating liquors transported into any State or remaining
therein for use, consumption, sale or storage, are, upon arrival
in such State, subject to the operation and effect of the laws
of the State to which they are shipped, and subject to the
police powers of such State, to the same extent as domestic
property therein, whether such liquors are transported in
original packages or otherwise. 26 Stat. 313, c. 728; *In re
Rahrer*, 140 U. S. 545; *Rhodes* v. *Iowa*, 170 U. S. 412.

Where merchandise is shipped C. O. D., the liability of the
carrier ceases and that of a warehouseman attaches at the
time of the arrival of such merchandise at the place of its
destination. *Weed* v. *Barney*, 45 N. Y. 344; *Gilson* v. *Am.
Merchants' Union Ex. Co.*, 1 Hun (N. Y.), 387; *Marshall* v.
*Am. Ex. Co.*, 7 Wisconsin, 1; *Pac. Ex. Co.* v. *Wallace*, 60

Arkansas, 100; Schouler on Bailments and Carriers, 2d ed., § 507.

There is no duty or obligation arising out of the nature of a carrier's business which requires such carrier to collect payment of the price of goods transported by it as a condition precedent to their delivery. Such obligation arises, if at all, by special contract, express or implied. *Cox* v. *Columbus &c. R. Co.*, 91 Alabama, 392; *Union R. Co.* v. *Riegel*, 73 Pa. St. 72.

The statute of Iowa under which the liquors were seized and condemned is set out upon pages 19 and 20 of the transcript of the record.

In the seventh paragraph of the agreed statement of facts, it is expressly stipulated that the packages of intoxicating liquors in question were to be delivered to the consignees at the office of the American Express Company in Tama, Tama County, Iowa. (Transcript of record, p. 5.)

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

Although the majority of the Supreme Court of Iowa doubted the correctness of a ruling previously made by that court, nevertheless it was adhered to under the rule of *stare decisis*, and was made the basis of the decision in this cause. In the previous case it was held by the Supreme Court of Iowa that, where merchandise was received by a carrier with a duty to collect the price on delivery to the consignee, the merchandise remained the property of the consignor, and was held by the carrier as his agent with authority to complete the sale. Upon this premise it was decided that intoxicating liquors shipped C. O. D. from another State were subject to be seized on their arrival in Iowa in the hands of the express company. Sustaining upon this principle the seizure in this case, the Supreme Court of Iowa did not expressly consider the defense based on the commerce clause of the Constitution of the United States, because the court deemed that its ruling on the subject of the effect of the C. O. D. shipment was a wholly non-Federal

ground, broad enough to sustain the conclusion reached.   And this the court considered was sanctioned by *O'Neil* v. *Vermont,* 144 U. S. 324.

In accord with the opinion of the Supreme Court of Iowa it is insisted at bar that this writ of error should be dismissed for want of jurisdiction, because the decision below involved no Federal question, and the case of *O'Neil* v. *Vermont, supra,* is relied upon.   The contention is untenable.   As pointed out in *Norfolk & Western Ry. Co.* v. *Sims,* 191 U. S. 441, the view taken of the *O'Neil* case is a mistaken one.   True, in that case the Supreme Court of Vermont gave to a C. O. D. shipment the effect attributed to it by the Supreme Court of Iowa in this case.   True, also, a writ of error was prosecuted from this court to the Vermont court upon the assumption that the commerce clause of the Constitution was involved, but this court dismissed the writ of error because it did not appear that the commerce clause of the Constitution was relied on in the state court, was in any way called to the attention of that court, or was passed upon by it.   As on this record it appears that the protection of the commerce clause was directly invoked in the state court, it is apparent that the *O'Neil* case is inapposite.   And as, in order to decide the contention that the judgment below rests upon an adequate non-Federal ground, we must necessarily consider how far the C. O. D. shipment was protected by the commerce clause of the Constitution, which is the question on the merits, we pass from the motion to dismiss to the consideration of the rights asserted under the commerce clause of the Constitution.

We can best dispose of such asserted rights by a brief reference to some of the controlling adjudications of this court.

In *Bowman* v. *Chicago & N. W. Ry. Co.,* 125 U. S. 465, it was held that the statutes of Iowa, forbidding common carriers from bringing intoxicating liquors into the State of Iowa from another State or Territory without obtaining a certificate required by the laws of Iowa, was void, as being a regulation of commerce between the States, and, therefore, that those laws

did not justify a common carrier in Illinois from refusing to receive and transport intoxicating liquors consigned to a point within the State of Iowa.

In *Leisy* v. *Hardin,* 135 U. S. 100, it was held that a law of the State of Iowa, forbidding the sale of liquor in that State, could not be made to apply to liquors shipped from another State into Iowa, before the merchandise had been delivered in Iowa and there sold in the original package, without causing the statute to be a regulation of commerce repugnant to the Constitution of the United States. In *Rhodes* v. *Iowa,* 170 U. S. 412, the same doctrine was reiterated, except that it was qualified to the extent called for by the provisions of the act of Congress of August 8, 1890, 26 Stat. 313, commonly known as the Wilson Act. In that case a shipment of intoxicating liquors had been made into the State of Iowa from another State, and the agent of the ultimate railroad carrier in Iowa was proceeded against for an alleged violation of the Iowa law, because when the merchandise reached its destination in Iowa he had moved the package from the car in which it had been transported to a freight depot, preparatory to delivery to the consignee. The contention was that, as by the Wilson Act, the power of the State operated upon the property the moment it passed the state boundary line, therefore the State of Iowa had the right to forbid the transportation of the merchandise within the State and to punish those carrying it therein. This was not sustained. The court declined to express an opinion as to the authority of Congress, under its power to regulate commerce, to delegate to the States the right to forbid the transportation of merchandise from one State to another. It was, however, decided that the Wilson Act manifested no attempt on the part of Congress to exert such power, but was only a regulation of commerce, since it merely provided, in the case of intoxicating liquors, that such merchandise, when transported from one State to another, should lose its character as interstate commerce upon completion of delivery under the contract of interstate shipment, and before sale in the original packages.

The doctrine of the foregoing cases was applied in *Vance* v. *Vandercook Company, No. 1*, 170 U. S. 438, 442, to the right of a citizen of South Carolina to order from another State, for his own use, merchandise, consisting of intoxicating liquors, to be delivered in the State of South Carolina.

Coming to test the ruling of the court below by the settled construction of the commerce clause of the Constitution, expounded in the cases just reviewed, the error of its conclusion is manifest. Those cases rested upon the broad principle of the freedom of commerce between the States and of the right of a citizen of one State to freely contract to receive merchandise from another State, and of the equal right of the citizen of a State to contract to send merchandise into other States. They rested also upon the obvious want of power of one State to destroy contracts concerning interstate commerce, valid in the States where made. True, as suggested by the court below, there has been a diversity of opinion concerning the effect of a C. O. D. shipment, some courts holding that under such a shipment the property is at the risk of the buyer, and, therefore, that delivery is completed when the merchandise reaches the hands of the carrier for transportation; others deciding that the merchandise is at the risk of the seller, and that the sale is not completed until the payment of the price and delivery to the consignee at the point of destination.

But we need not consider this subject. Beyond possible question, the contract to sell and ship was completed in Illinois. The right of the parties to make a contract in Illinois for the sale and purchase of merchandise, and in doing so to fix by agreement the time when the condition on which the completed title should pass, is beyond question. The shipment from the State of Illinois into the State of Iowa of the merchandise constituted interstate commerce. To sustain, therefore, the ruling of the court below would require us to decide that the law of Iowa operated in another State so as to invalidate a lawful contract as to interstate commerce made in such other State; and, indeed, would require us to go yet further, and say

that, although under the interstate commerce clause a citizen in one State had a right to have merchandise consigned from another State delivered to him in the State to which the shipment was made, yet that such right was so illusory that it only obtained in cases where in a legal sense the merchandise contracted for had been delivered to the consignee at the time and place of shipment.

When it is considered that the necessary result of the ruling below was to hold that wherever merchandise shipped from one State to another is not completely delivered to the buyer at the point of shipment so as to be at his risk from that moment the movement of such merchandise is not interstate commerce, it becomes apparent that the principle, if sustained, would operate materially to cripple if not destroy that freedom of commerce between the States which it was the great purpose of the Constitution to promote. If upheld, the doctrine would deprive a citizen of one State of his right to order merchandise from another State at the risk of the seller as to delivery. It would prevent the citizen of one State from shipping into another unless he assumed the risk; it would subject contracts made by common carriers and valid by the laws of the State where made to the laws of another State, and it would remove from the protection of the interstate commerce clause all goods on consignment upon any condition as to delivery, express or implied. Besides, it would also render the commerce clause of the Constitution inoperative as to all that vast body of transactions by which the products of the country move in the channels of interstate commerce by means of bills of lading to the shipper's order with drafts for the purchase price attached, and many other transactions essential to the freedom of commerce, by which the complete title to merchandise is postponed to the delivery thereof.

But general considerations need not be further adverted to in view of prior decisions of this court relating to the identical question here presented. In *Caldwell* v. *North Carolina*, 187 U. S. 622, the facts were these: The Chicago Portrait Com-

pany shipped to Greensboro, North Carolina, by rail, consigned to its order, certain pictures and frames. At Greensboro the company had an agent who received the merchandise, put the pictures and frames together and delivered them to the purchasers who had ordered them from Chicago. The contention was that the portrait company was liable to a license charge imposed by the town of Greensboro for selling pictures therein, and this was supported by the argument that, although the contract for sale was made in Chicago, it was completed in North Carolina by the assembling of the pictures and frames and the delivery there made. It was held that the license could not be collected, because the transaction was an interstate commerce one. In the course of the opinion, after a full review of the authorities, it was observed (p. 632):

"It would seem evident that, if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to State taxation. The same could be said if the vendor himself, or by a personal agent, had carried and delivered the goods to the purchaser. That the articles were sent as freight, by rail, and were received at the railroad station by an agent, who delivered them to the respective purchasers, in nowise changes the character of the commerce as interstate."

In *Norfolk & Western Railway Company* v. *Sims*, 191 U. S. 441, these were the facts: A resident of North Carolina ordered from a corporation in Chicago a sewing machine. The machine was shipped under a bill of lading to the order of the buyer, but this bill of lading was sent to the express agent at the point of delivery in North Carolina, with instructions to surrender the bill on payment of a C. O. D. charge. The contention was that the consummation of the transaction by the express agent in transferring the bill of lading upon payment of the C. O. D. charge was a sale of the machine in North Carolina, which subjected the company to a license tax. The contention was held untenable. Calling attention to the fact that the contract of sale was completed as a contract in Chi-

cago, and after reviewing some of the authorities on the subject of interstate commerce, the court said (p. 450):

"Indeed, the cases upon this subject are almost too numerous for citation, and the one under consideration is clearly controlled by them. The sewing machine was made and sold in another State, shipped to North Carolina in its original package for delivery to the consignee upon payment of its price. It had never become commingled with the general mass of property within the State. While technically the title of the machine may not have passed until the price was paid, the sale was actually made in Chicago, and the fact that the price was to be collected in North Carolina is too slender a thread upon which to hang an exception of the transaction from a rule which would otherwise declare the tax to be an interference with interstate commerce."

The controlling force of the two cases last reviewed upon this becomes doubly manifest when it is borne in mind that the power of the States to levy general and undiscriminating taxes on merchandise shipped from one State into another may attach to such merchandise before sale in the original package when the merchandise has become at rest within the State, and therefore enjoys the protection of its laws, and this upon the well-recognized distinction that the movement of merchandise from State to State, whilst constituting interstate commerce, is not an import in the technical sense of the Constitution. *American Steel & Wire Company* v. *Speed*, 192 U. S. 500.

As from the foregoing considerations it results that the court below erred in refusing to apply and enforce the commerce clause of the Constitution of the United States, its judgment must be reversed.

*The judgment of the Supreme Court of Iowa is reversed, and the cause is remanded to that court for proceedings not inconsistent with this opinion.*

MR. JUSTICE HARLAN dissents