E. L. BRUCE CO. v. HANNON.    (No. 3187.)

(Court of Civil Appeals of Texas. Texarkana. March 13, 1926. Rehearing Denied April 15, 1926.)

1. **Courts** ⚖121(1)—Officer, after making levy under writ of attachment and indorsing assessed value on claimant's bond, may make additional levy two days later, and aggregate valuation determines court to which return should be made (Rev. St. 1925, arts. 282, 7406–7409).

Officer, after making levy under writ of attachment and indorsing assessed value on claimant's bond, may make additional levy two days later, and before return day, under same writ, indorse its assessed value on claimant's subsequent levy, and aggregate valuation determines jurisdiction of court to which return should be made, under Rev. St. 1925, arts. 7406–7409, since requirement therein for making return "forthwith" allows reasonable time, in view of article 282.

2. **Logs and logging** ⚖3(7).

Purchase of growing timber by foreign corporation through another *held* purchase of personalty, and not realty.

3. **Appeal and error** ⚖1177(6)—Court cannot render judgment for appellant, where case was disposed of in trial court only on appellant's right to resort to Texas courts for remedy.

Assignment that court should render judgment for appellant cannot be sustained, where

case was disposed of in trial court only on appellant's right to resort to Texas courts for remedy.

## On Rehearing.

4. **Corporations ⬬661(2) — Foreign corporation may maintain claim proceeding to obtain logs held under writ of attachment after delivery for shipment, though it bought and cut timber without compliance with statute (Rev. St. 1925, arts. 1529–1537).**

Foreign corporation may maintain claim proceeding for logs held under writ of attachment against another, and which had been delivered to railroad for shipment, though it bought and cut the timber without complying with Rev. St. 1925, arts. 1529–1537, where it bought it for immediate severance, since such course of dealing constitutes interstate commerce.

5. **Corporations ⬬661(2)—Foreign corporation, not complying with statute, may maintain proceeding to obtain logs held under writ of attachment, where they were its absolute property; "deprived" (Rev. St. 1925, arts. 1529–1537).**

Foreign corporation, which has not complied with Rev. St. 1925, arts. 1529–1537, may maintain claim proceeding to obtain logs held under writ of attachment, where it had paid for them, and they had become its absolute property, since, if statute was applicable to claim brought to recover possession of such property, it would be "deprived" thereof without opportunity to show nonliability.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deprive.]

6. **Corporations ⬬661(2) — Foreign corporation, not complying with statute, cannot maintain claim for logs bought in another's name, where there had been no delivery (Rev. St. 1925, arts. 1529–1537).**

Foreign corporation, which has not complied with Rev. St. 1925, arts. 1529–1537, cannot maintain claim for logs attached as property of another, where it had bought them in such other's name, but there had been no delivery, since it would have been necessary to prove and in effect enforce contract.

Hodges, J., dissenting in part.

Appeal from District Court, Bowie County; R. J. Williams, Judge.

Statutory proceeding of the trial of right of personal property seized under a writ of attachment by the E. L. Bruce Company against V. T. Hannon. From a judgment denying a recovery, claimant appeals. Reversed and remanded.

This is a statutory proceeding of the trial of right of certain personal property seized under a writ of attachment issued out of the county court. The claimant appeals from a judgment denying a recovery of the property.

On June 15, 1925, V. T. Hannon sued T. H. Lemastus on open account for the amount of $382.69. On the same day the suit was filed a writ of attachment was sued out. On July 20, 1925, the officer levied the attachment upon "one Ford truck No. 10233570 and one Neighbor's trailer No. 89766." The property was seized as the property of the defendant T. H. Lemastus, in Bowie county, Tex. On July 21, 1925, E. L. Bruce Company, a corporation, made a claimant's affidavit and bond and forthwith presented them to the officer who made such levy. The officer indorsed on such bond the value of the property as assessed by him at "$150," and he approved and received such bond the day of its execution. On July 23, 1925, the same officer made an additional levy under the same writ of attachment, and before he had made return of the writ, upon "150 logs," as the property of T. H. Lemastus, in Bowie county, Tex. On July 24, 1925, E. L. Bruce Company made a claimant's affidavit and bond and forthwith presented them to the officer who made such levy. The officer indorsed on such bond the value of the property as assessed by him at "$450," and he approved and received such bond on the day of its execution. The officer then forthwith returned both bonds, together with the two claimant's affidavits, to the district court of Bowie county. As appears, the case was docketed in the district court as one cause. At the time of returning the oaths and bonds the officer returned the original writ of attachment to the county court, the court it issued from, reciting the levy and the execution of the two bonds and oath.

The issues submitted by the parties were, in substance, as follows: By the claimant: That T. H. Lemastus, an independent contractor, agreed to sell logs of merchantable ash timber to claimant at the price of $19.-90 per thousand feet, payable on delivery f. o. b. the cars Missouri Pacific Railroad Company, Texarkana, Ark., for through shipment to Memphis, Tenn.; that it was agreed that the title to the logs should pass to claimant upon delivery of the same to the said railroad company for transportation; that the particular logs in suit had been delivered to the said railroad company for shipment to claimant, and were in its exclusive possession prior to the date of the attachment; that the Ford truck and trailer were owned by the claimant and were leased or loaned to T. H. Lemastus to enable him to haul the logs. The plaintiff claimed: That the logs were in possession and ownership of T. H. Lemastus in Bowie county, Tex., on the right of way of the Texas & Pacific Railway Company in Texarkana, Tex.; that the Ford truck and trailer were in fact the property of T. H. Lemastus. The plaintiff further specially pleaded that the E. L. Bruce Company was a foreign corporation, with its principal office and place of business in Memphis, Tenn., and that it was

doing business in Texas without a permit from the state to do so, and therefore said company was not legally entitled to maintain the proceeding.

The E. L. Bruce Company was a foreign corporation, with domicile in Memphis, Tenn., engaged in manufacturing hardwood floors. It sawed logs into flooring and sold the flooring. It had no permit to do business in Texas. It was also proven, and admitted:

"That the Missouri Pacific Railroad Company has no loading side tracks in Texarkana, Ark., but that it used the side tracks of the Texas & Pacific Railway Company in Texarkana, Tex., by virtue of a reciprocal contract between the two roads."

The contract between E. L. Bruce Company and T. H. Lemastus was made and signed in Memphis, Tenn., although the land from which the logs were to be felled was located in Bowie county, Tex. The logs were attached in Texarkana, Bowie county, Tex. At the time of the seizure under attachment 48 of the logs were loaded on the cars and 34 were on the side track ready to be loaded on the cars. All of these logs had been cut and delivered by T. H. Lemastus, and he had been paid therefor by the claimant. As a fact, only 82 logs appear to have been seized and claimed by the claimant.

The court overruled the plea of claimant of jurisdiction to try the proceedings. After hearing the case on the merits the court concluded, as recited in the judgment, as follows:

"The defendant E. L. Bruce Company is a foreign corporation and is doing business within the state of Texas without a proper legal permit and without having complied with the laws of the state of Texas entitling it to do business in this state; that the contract between E. L. Bruce Company and T. H. Lemastus was only a subterfuge, and neither party thereto was operating under it; that E. L. Bruce Company was not engaged in buying logs f. o. b. the cars Texarkana, Tex., but had moved its camping outfit into Texas and was hiring labor and cutting its own timber; for this reason the court finds that defendant is not entitled to maintain this suit."

Continuing, the judge reads:

"It is therefore ordered, adjudged, and decreed by the court that the claim of the defendant E. L. Bruce Company for the logs and Ford truck and trailer be and the same is dismissed; that the plaintiff have judgment against defendant E. L. Bruce Company and the sureties on its claim bonds for the amount recovered in the county court of Bowie county in the case entitled V. T. Hannon v. T. H. Lemastus," etc.

Arnold & Arnold, of Texarkana, Ark., for appellant.

Taylor & Wimmer, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). [1] Two questions are presented by the record and urged by the appellant as error. First: Did the district court have jurisdiction to entertain and try the proceedings in the special circumstances? The officer forthwith levied the original attachment writ at different times and places upon an amount of property as a whole sufficient to satisfy the writ. Each separate seizure was of an amount of property insufficient to raise the sum necessary to enforce the writ. The claimant promptly made claim, secured by bond, to the property seized at the different dates. Appellant insists that the two separate claims cannot be united in one action and the aggregate value of the property assessed by the officer considered for the purpose of making up the jurisdictional amount of the court; that in virtue of the assessed value of the property the first bond and claim are returnable to the justice court, and the second bond and claim are returnable to the county court. The statutory provisions (Rev. St. 1925) invoked as applicable to the question read:

"Art. 7406. Whenever any person shall claim property and shall duly make the oath and give the bond, if the writ under which the levy was made was issued by a justice of the peace or a court of the county where such levy was made, the officer receiving such oath and bond shall indorse on the writ that such claim has been made and oath and bond given, and by whom; and shall also indorse on such bond the value of the property as assessed by himself, and shall forthwith return such bond and oath to the proper court having jurisdiction to try such claim. * * *

"Art. 7407. If the writ under which such levy was made was issued by a justice of the peace or a court of another county than that in which such levy was made, then the officer receiving such oath and bond shall indorse on such bond the value of the property as assessed by himself, and shall forthwith return such bond and oath with a copy of the writ, to the justice or court of the county in which such levy was made having jurisdiction according to the value of the property as assessed by said officer.

"Art. 7408. The officer taking such bond shall also indorse on the original writ that such claim has been made and oath and bond given, stating by whom, the names of the sureties and to what justice or court the bond has been returned; and he shall forthwith return such original writ to the tribunal from which it issued.

"Art. 7409. Cases arising under this chapter shall be tried in courts having jurisdiction of the amount involved."

The foregoing provisions clearly fix the rule that the jurisdiction of justice, county, and district courts in trials of the right of property is to be determined by "the assessed value of the property" fixed by the levying officer. Cleveland v. Tufts, 7 S. W. 72, 69 Tex. 580; Leman v. Borden, 19 S. W. 160, 83 Tex. 620. The levying officer is required to indorse on "such bond" the valuation of the property levied on and to return "such

bond" with the indorsement on it to the proper court. The jurisdictional amount is evidenced by this method of valuation. The words "such bond," as used, merely refer, and have no other significance than to express with distinctiveness, "the bond," such as is executed by the claimant. And the words "such bond" or "the bond" could and would include all bonds the claimant is authorized or required to give in the particular levy, whether it be one bond or two bonds. The words do not necessarily mean and refer to a single bond. It is apparent, then, that the aggregate valuation of all the property seized under the original writ can be regarded as governing the question of jurisdiction of the courts, whether evidenced by a single bond or several bonds given by the same claimant covering the levies made under the same original writ. There is no express or implied negative to that course. And a separate claim, secured by separate bond, with separate valuation by the officer, is not forbidden, expressly or impliedly, in the case of successive levies under the same original writ. The requirement of the levying officer "to forthwith return" both "such bond" and "the original writ" does not necessarily imply that only one bond can be taken, or that each bond, taken separately, would evidence and determine the jurisdictional amount of the court. "Forthwith" allows a reasonable time, and as used means only that the officer shall make due return, without unnecessary delay, according to the exigencies of each particular case. Such construction is in entire harmony with the statutory provisions considered all together. The statute requires an officer charged with the execution of a writ of attachment, and an execution too, to levy upon "so much of the property of the defendant as shall be sufficient to satisfy the demand of the plaintiff and the probable costs of the suit." Art. 282, R. S. But on occasions it might not be possible to find at one time and in the same place property sufficient to satisfy the exigencies of the writ. In such case several separate seizures are unavoidable. The officer must first levy upon the particular property first found, and must proceed to make such additional levies as may be necessary to enforce full payment of the writ. It is as much the duty of the officer to avoid making an inadequate levy as to avoid making an excessive levy. The first levy upon the property first found does not operate to satisfy the writ and deprive the officer of further power to act.

The rule is general that an officer, notwithstanding his prior levy, has at any time before the return day the power to make such further seizures as may be necessary to satisfy the plaintiff's debt and costs of suit. Of course, when the officer has levied upon personal property sufficient to satisfy

the writ, his authority to make further levies may be assailed on the ground that the levy already made operates as a conditional satisfaction of the debt or judgment. By the claim statute a single bond is not required of the claimant under any and all circumstances; hence a separate claim, secured by bond, can be made by the claimant in case the levying officer, as he is authorized to do, makes separate seizures at different times under the same writ of attachment. The claimant is not forbidden to do so, and the officer is not forbidden to take the bond. It may be very necessary to a claimant, and highly prejudicial to refuse to allow him, to obtain a quick or immediate release of the property and possession thereof by claimant's oath and bond at the time of each seizure. An enforced delay might cause loss or damage to him in the use or enjoyment of the particular property. In effect the first claim, secured by bond, is only a partial claim, as is the first seizure only a partial seizure under the original writ of attachment. The two claims, secured by bond, as well as the two seizures under the writ, arise out of one and the same transaction, the levy of the same original attachment upon the property of the claimant. No reason is perceived why the aggregate valuation of the property should not be regarded as making up the jurisdictional amount of the court. The rights of the parties are wholly unaffected by such course, there are no undue complications arising to them, and the statute contains no express or implied negative. To otherwise hold would produce undue complications and oppressive litigation. The just inference is that it was not the intention of the Legislature to have double suits or multiplicity of suits between the same parties, both claiming in reality under a common right. Elser v. Graber, 6 S. W. 560, 69 Tex. 223. To construe the statute as insisted by appellant would bring about a result, not intended by the Legislature, of double suits and the restriction of the right to make successive levies under the same original writ. It is apparent that the present statutory provisions were not intended to operate in restriction of the right of the levying officer to make adequate levy under the writ. Yet it would effectually do so if the words "forthwith return" be given the force and meaning of "at once," or "immediately." A claim being made, secured by bond, under the first seizure, the attachment would at once, upon approval of the one bond, be due for return, and any right under it to the officer would legally cease to make further levy at a subsequent period. A second seizure, although two days afterwards, would be ineffectual because made at a time after the original writ was due for return. The requirement of "forthwith return" was, as concluded by the majority of this court, in-

tended merely to hasten the return within a reasonable time, as authorized by the circumstances of each particular case.

[2] The second question presented and urged pertains to the right of the appellant in the circumstances to maintain the claim proceedings; it being a foreign corporation without a permit to transact business in this state. The facts, as found by the court, are: That appellant, and not T. H. Lemastus, was the real purchaser of the growing timber on the land in evidence, and that T. H. Lemastus was not selling to appellant f. o. b. in cars Texarkana, Tex., the logs cut from the land, but that he was an agent or employee of appellant; that appellant "had moved its camping outfit into Texas and was hiring labor and cutting (into logs) its own timber." Upon such facts the court based the conclusion that appellant was amenable to the statute of this state concerning foreign corporations. Arts. 1529 to 1537, R. S. The judgment as entered in effect denies to appellant the right to enforce its claim to the logs it was entitled to, and requires appellant to return the logs to the levying officer, and, not having done so, to pay the value of the same. We must assume the facts found by the court to be correct. It is believed that the further facts, additional to the facts stated by the court, cannot be put aside, since they appear undisputed in the record. They show that what otherwise seems an intrastate transaction is legally a part of interstate commerce. It is shown that the parties acquired the trees growing on the land for immediate severance, intending to forward such timber by a common carrier direct from Texarkana, Tex., to appellant's mill in Memphis, Tenn., as soon as felled and cut into sizable logs. In keeping with that purpose T. H. Lemastus, for appellant, as the court found, began felling the trees, cutting them into sizable logs and delivering such logs at Texarkana, Tex., to the Missouri Pacific Railway Company for through shipment to its mill at Memphis, Tenn. Texarkana, Tex., was a few miles from the land on which the timber grew. The logs in suit had actually been delivered to and were in the possession of the said railway company for shipment when levied upon. Such course of dealing constitutes interstate commerce. The case is closely analogous in the facts, and altogether so in principle, to the case of Dahnke-Walker Co. v. Bondurant, 42 S. Ct. 106, 257 U. S. 282, 66 L. Ed. 239, and the cases therein cited. The purchase of the timber through T. H. Lemastus was as personalty, and not as realty. Carter v. Clark & Boice Lumber Co. (Tex. Civ. App.) 149 S. W. 278; Houston Oil Co. v. Boykin, 206 S. W. 815, 109 Tex. 276. Interstate commerce includes the purchase of the timber as personalty, intending it to be immediately transported, as much as it does the transportation

to another state. Express Co. v. Iowa, 25 S. Ct. 182, 196 U. S. 133, 49 L. Ed. 417. It is immaterial that appellant's own employees, as the court concluded, felled the timber, in order to effect its quick transportation, since the buying of the timber was incidental to the transportation. It was therefore error to dismiss the claim proceeding by appellant. Railway Company v. Davis, 54 S. W. 381, 55 S. W. 562, 93 Tex. 378.

[3] The other assignment, that this court should render judgment for appellant, we think, cannot be sustained, since the case was disposed of in the trial court only on the right of the appellant to resort to the courts of Texas for remedy. But it is intimated, if in another trial of the case it be correct, either as found by the court, that appellant was the purchaser of the timber and was cutting "its own timber," or that Lemastus, owner of the timber, had made delivery of the logs to the railway company for through shipment to appellant at Memphis, Tenn., then, as the owner of the logs, appellant would be entitled to claim the same, and a judgment should be entered in its favor on the claim to the property. The same would apply to the automobile and trailer.

The judgment is reversed, and the cause remanded generally for trial on the merits.

HODGES, J. I think this case should be reversed and order dismissed for want of jurisdiction in the trial court.

### On Rehearing.

LEVY, J. [4, 5] The appellee insists that we were in error in holding that the appellant was legally entitled to maintain the claim proceeding in the circumstances, notwithstanding it was a foreign corporation not regularly admitted to do business within the limits of the state. After a further consideration of the case, it is thought that such ruling was correct under the facts as developed in the present trial as to 82 of the logs in controversy. The statute being considered does not apply to the 82 logs because: (1) The shipment of the logs constituted a transaction peculiar to interstate commerce, and therefore not subject to the prohibition of such statute; (2) the statute does not apply to an action in claim brought to recover merely the possession of personal property of which the claimant at the time was the absolute owner.

The precise facts are that appellant, in its home state of Tennessee, was engaged in the business of manufacturing logs into hardwood flooring. In the light of the court's findings of fact appellant "acquired in the name of T. H. Lemastus by timber deed" a certain tract of growing trees in Texas, and then "moved its camping outfit into Texas, and was hiring labor and cutting (into logs) its own timber" to be shipped to its mill in Ten-

nessee. It had acquired the growing trees, and the logs in suit were cut from such trees prior to the levy of the attachment and prior to the date of the claimant's affidavit and bond. Of the "150 logs" attached 82 had actually been delivered to the railway company for through shipment to appellant at its mill in Tennessee. The evidence in this respect was undisputed. The witness stated: "There were 48 logs loaded on cars, and 34 logs were on the dump," or right of way, for loading. The railway company had placed cars at that place for the purpose of receiving the logs, and the cars were being loaded. And as further testified:

T. H. Lemastus "was paid on July 15, 1925, for all these 82 logs that were attached. He had received every cent due him in the shape of what he had coming on these 82 logs. The logs were brought in and dumped alongside the railroad track in such shape that they could be loaded on cars. After they were dumped we scaled them, measured the number of feet, numbered and branded with 'Bruce'—these logs had been scaled, stamped, and branded and paid for all before the attachment."

T. H. Lemastus stated:

"As to who owned these logs that were attached at the time they were attached, they had passed into the hands of Bruce & Co. I did not have any further claim on these logs, and had no control over them. They paid me up in full."

The evidence is without conflict in this respect.

The court was authorized to find, as he did, that the other 68 logs had not been delivered to and received by the railway company. Further the court was authorized to find that T. H. Lemastus had not surrendered to appellant the complete control of the 68 logs. As found by the court, T. H. Lemastus held the bare legal title by deed to the timber as trustee for appellant, the real beneficiary owner. As to the 82 logs, T. H. Lemastus had passed to appellant by delivery the actual possession and complete control over the same in full discharge of the trust.

[6] It can be conceded that in such circumstances the appellant's "moving of its camping outfit into Texas and hiring labor" to "cut its own timber" into logs to be shipped to its mill in Tennessee was "doing of business" in Texas in furtherance of appellant's business in its home state. Smythe Co. v. Fort Worth Glass & Sand Co., 142 S. W. 1157, 105 Tex. 8. And it may be generally conceded that in virtue of such fact of doing business in Texas without a permit the appellant was, under the statute, denied the right to enforce in the courts of the state any demand arising in contract or tort through the business so done. Art. 1536, R. S. Even so, it would not necessarily follow in the facts that the claim for all the logs was prohibited to appellant. As to claim for 68 logs, the statute could be said to be applicable, for it became neces-

sary for appellant to prove that by contract with T. H. Lemastus it was entitled to the possession of the said 68 logs. In effect the claim would be enforcing a contract for possession, and it would be dependent upon a contract for possession. Lemastus had the legal right to hold possession as trustee, and he had not surrendered that right by actual delivery. Appellant at the time of the claim was not in complete control and possession of such property independent of any contract with respect thereto, although beneficial owner. But that is not the situation respecting the 82 logs claimed. In fact, on the trial the appellant appeared to be claiming that "only 82 logs belonged to the company at the time of the attachment." As proven, the appellant was the absolute owner, in complete control and possession, of the 82 logs at the time of the attachment and claim action. If T. H. Lemastus previously held the apparent legal title to the growing trees as trustee for appellant, still the trees had been reduced to personalty in the shape of "logs," and the logs were actually delivered to appellant. By the delivery of the logs the trust was discharged and both the legal and equitable title were combined in appellant. Lemastus was no longer holding or withholding the possession of the 82 logs by virtue of or by reason of a contract. The contract had been fully performed and finally discharged as to such logs. The full title became vested in the appellant in the logs, and was such legal title as could have been transmitted to a third party. It was no longer necessary to enforce any contract to obtain possession. In virtue of such ownership together with complete control and possession of the 82 logs, the appellant delivered same to the railway company for interstate shipment, and they had been received by the railway company for that purpose. Therefore, in the circumstances, as to the 82 logs, the statute being considered would not have application in denial of appellant's right to maintain the claim proceeding. Appellee does not deny the matters peculiar to interstate commerce are not subject to the prohibition of the statute; further, the statute does not apply to an action in claim brought to recover the possession of personal property claimed to be absolutely owned at that time. The failure to obtain the required permit before doing business in the state does not forfeit the title to the property or make null and void the purchase of the same. The consequences of violating the statute imposing conditions upon the right of a foreign corporation to do business in Texas would be the prohibition to maintain "any action in any court of this state" upon any demand, arising in contract or tort, through the business so done. The statute does not annex the penalty nor intend that the violation of such statute shall operate to make void and unenforceable contracts and purchases of property made be-

fore its conditions were complied with. As expressly stated in the case of Smythe Company, supra:

"The law of this state does not render void the contract made and performed in the transaction of business in this state by the foreign corporation without a permit, but only denies such corporation the right to enforce such contract or cause of action arising out thereof in the courts of this state."

Consequently, being both the legal and equitable owner of the 82 logs, the appellant had the right, as a legal incident of such ownership, to the absolute and continued lawful possession thereof. It is easily apparent in such case that appellant was, legally speaking, "deprived" of its property when it was physically taken from it to be wrongfully subjected to the debt of another. And the constitutionality of a statute would be manifestly involved, in effect operating to deprive an owner of his property without an opportunity to save by showing its non-liability. The statute was not intending to accomplish that result. Its terms indicate that it was not intended to be applicable to such circumstances. A claim seeking merely to recover possession of property of which the claimant is absolute owner and in complete control and possession at the time of attachment cannot properly be termed "a demand arising out of contract." Such claim at the time made is entirely independent of any existing contract as between the parties to the claim; it simply seeks the return of the property absolutely belonging to the claimant at the time. Such claimant is not at the time enforcing any contract. The contract and trust had been discharged; the full title, with right of actual possession, had vested absolutely on the delivery of the 82 logs. Had he, the trustee, Lemastus, not surrendered possession and control by actual delivery of the 82 logs, a different situation would probably have been presented. Neither can a claim proceeding, such as is here, be termed an action "for tort," that grew out of or was coincident with an existing contract between the parties. Therefore the statute does not prevent an unregistered foreign corporation from maintaining a judicial proceeding for recovering merely the possession of personal property absolutely owned by it; such possession in no wise being withheld under or by virtue of any existing contract between the parties. It has been held that replevin of bonds is not within the prohibition of a similar statute (Mfg. Co. v. Cauffiel, 89 A. 798, 243 Pa. 24); that claim of possession of a cash register is not prohibited (Cash Register Co. v. Wilson, 81 N. W. 285, 9 N. D. 112).

A correction in the original opinion is made so as to say that the preliminary work to be performed of felling the timber for the purpose of putting it into a state of preparation and readiness for transportation did not constitute the property a subject of interstate commerce, before hauling and delivering it to the common carrier.

The motion is overruled.

HODGES, J. (dissenting). While I concur in the legal conclusion stated as a ground for reversing the judgment in this case, I think it should have been dismissed for want of jurisdiction in the trial court. The record shows that two separate and distinct claims were filed. One is based upon an affidavit and bond dated July 21, and the other on an affidavit and bond dated July 24. The first claim involves an auto truck and trailer valued at $150; the second claim involves a number of logs valued at $450. These values were added in order to bring the subject-matter within the jurisdiction of the district court. The question is, Can that be done?

The proceeding in a trial of the right of personal property is purely statutory. The following articles of the Revised Statutes of 1911 settle, I think, the question of jurisdiction:

"Art. 7773. Whenever any person shall claim property and shall make the oath and give the bond, as provided for in this chapter, if the writ under which said levy was made was issued by any justice of the peace or court of the county where such levy was made, the sheriff or other officer receiving such oath and bond shall indorse on the writ that such claim has been made and oath and bond given, stating by whom, and shall also indorse on such bond the value of the property as assessed by himself, and shall forthwith return such bond and oath to the proper justice or court having jurisdiction to try such claim, as hereinafter provided. * * *

"Art. 7776. Whenever any person shall claim property and shall make the oath and give the bond as provided for herein, if the writ under which such levy was made was issued by any justice of the peace or court of another county than that in which such levy was made, then the officer receiving such oath and bond shall indorse on such bond the value of the property as assessed by himself, and shall forthwith return such bond and oath, with a copy of the writ, to the justice or court of the county in which such levy was made having jurisdiction according to the value of the property as assessed by said officer.

"Art. 7777. The sheriff or other officer taking such bond shall also indorse on the original writ that such claim has been made and oath and bond given, stating by whom, the names of the sureties and to what justice or court the bond has been returned; and he shall forthwith return such original writ to the justice or court from which it is issued.

"Art. 7778. Cases arising under this chapter shall be tried as follows:

"1. Where the assessed value of the property does not exceed two hundred dollars, the writ shall be returned to a justice of the peace, as before provided.

"2. Where the value assessed is more than two hundred dollars and does not exceed five hundred dollars, the writ shall be returned to the proper county court.

"3. When the assessed value is more than five hundred dollars, the writ shall be returned to the proper district court.

"Art. 7779. Whenever any oath and bond for the trial of the right of property shall be returned, as provided for in this chapter, it shall be the duty of the clerk of the court, or of such justice of the peace, to docket the same in the name of the plaintiff in the writ as the plaintiff, and the claimant of the property as defendant."

Stated in a summary manner, the law requires that, when property levied upon is claimed by one not a party to the writ, and a proper affidavit and bond are presented to and accepted by the officer executing the writ, his duty is plain. He must assess the value of the property, indorse that valuation on the bond, and then return both the bond and the affidavit to a court of competent jurisdiction. That valuation determines the court to which the papers shall be sent, or returned, and in which the case must be tried. If. the value of the property is $200 or less, the bond and affidavit must be returned to a justice court. If more than $200 and less than $500, they must be returned to the county court. If over $500, the district court is the proper tribunal in which to try the case and to which the papers must be returned. That return must be made "forthwith." 2 Bouv. Law Dict. 1289, thus defines the word "forthwith":

"As soon as by reasonable exertion, confined to the object, it may be accomplished. * * * It is not as promptly as immediately; in some cases it might mean within a reasonable time. * * * When a defendant is ordered to plead forthwith he must plead within twenty-four hours. * * * In other matters of practice the word has come to have the same meaning."

The affidavit and bond when presented make a complete legal controversy, and when received by the justice of the peace, or clerk of the county or district court, to whom sent, must be entered on the docket, subject to trial at the next succeeding term of the court. It also becomes the duty of the officer who made the levy to "forthwith" return to the court from which it was issued the writ by virtue of which he seized the property. That direction seems to imply that the writ should not be held and used as authority for other levies. Whatever delay may be implied in the language defining the word "forthwith," the statute evidently means that the writ shall be returned without unnecessary delay, and without being held for further execution. The important feature of this law to be considered in this connection is, not the time that may lawfully be taken in making the actual return of the papers to the proper court, but the happening of an event, or occurrence of a legal transaction, which terminates the life of the writ. If upon the happening of that event, or the occurrence of that transaction, the writ must be returned, it is because it cannot be further legally used for seizing other property. If an officer should, immediately after the filing, of a claimant's bond, make an actual return of the writ, refusing to hold, it as authority for seizing property belonging to the defendant, he could not be held liable for a dereliction of duty, because in thus acting he had only obeyed the law. If he may, under such conditions, return the writ and refuse to make other levies until furnished with another writ, then he must do it. The law allows him no discretion in such matters. It is true that under the general law a writ of attachment is returnable on or before the first day of the next term of the court from which it was issued. That is a general provision fixing the return day of writs which have not been executed, or those which have been levied upon property claimed only by the defendant. But, when a claim is made in the manner prescribed by the statute, an exceptional situation arises, and the proceeding, including the return of the writ, are controlled by the law relating to that situation. In special proceeding appropriate special statutes supersede the general law.

When a time arrives or the event occurs when the writ must be returned without further execution, it becomes functus officio, and all subsequent seizures are void. Cain v. Woodward, 12 S. W. 319, 74 Tex. 549; Terry v. Cutler, 23 S. W. 539, 4 Tex. Civ. App. 570; 3 Freeman on Ex. (3d. Ed.) § 353. The clear inference from the record in this case is that the truck and trailer involved in this suit and valued at $150 were seized under the writ of attachment on or before July 21, the date of the affidavit and bond. When that claim was legally made, the writ ceased to be authority for further seizures and was returnable to the proper justice court forthwith, or immediately. The seizure of the logs, presumably made later, was without authority and void. The officer had no legal authority to add the two valuations together and thereby confer jurisdiction on the district court, as was attempted in this case.

There is a reason for requiring an original writ to be returned before the day fixed by the general law. Trial of right of property is a summary proceeding and is designed to be a short and expeditious method of settling such collateral controversies. Lang v. Dougherty, 12 S. W. 29, 74 Tex. 228; Towns' Pleading (2d Ed.) 587. No provision is made for notifying the plaintiff in the writ that a claim has been made by a third party, and in what court he is required to appear and contest the claim. It has been held that the return of the writ to the court from which it was issued is intended to operate as constructive notice. Betterton, Irvine & Co. v. Buck, 2 Willson, Civ. Cas. Ct. App. § 198, page 160. It may also be necessary to introduce the writ in evidence to prove material facts put in issue by the pleadings of the

parties. Fort Worth Pub. Co. v. Hitson, 14 S. W. 843, 16 S. W. 551; 80 Tex. 234; Latham v. Selkirk, 11 Tex. 314; Towns' Pleading (2d Ed.) 593; and cases referred to in notes.

For the reason stated, I think the district court had no jurisdiction over the subject-matter of this controversy, and should of its own motion have dismissed the case. The question is a fundamental one, and it is of no importance that the failure of the trial court to so act is not assigned as error.